IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHATONYA BYNDUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 01452 |
| v. ) | |
| ) | Magistrate Judge Mary M. Rowland |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Chatonya Byndum ("Plaintiff") filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act (the "Act"). 42 U.S.C§§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 14). Plaintiff filed a Motion for Summary Judgment on June 24, 2017. (Dkt. 17). The Commissioner filed her motion on August 9, 2017. (Dkt. 19). For the reasons stated below, this case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 9, 2013. (R. at 17). In both applications, Plaintiff alleged disability beginning January 1, 2013. (*Id.*) These claims were denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.*) On November 20, 2015, Plaintiff, represented by

counsel, testified at a hearing before Administrative Law Judge (ALJ) Melissa M. Santiago. (*Id.*) The ALJ also heard testimony from Brian L. Harmon, an impartial vocational expert ("VE"). (*Id.*)

The ALJ denied Plaintiff's request for benefits on December 15, 2015. (R. at 17–27). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2013. (*Id.* at 19). At step two, the ALJ found that Plaintiff had the following severe impairments: lupus, fibromyalgia, depression, anxiety, posttraumatic stress disorder ("PTSD"), and substance abuse. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 20). The ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as lifting/carrying 20 pounds occasionally and ten pounds frequently, standing/walking about six hours in an eight hour workday, and sitting about six hours in an eight hour workday. Additionally, the ALJ limited Plaintiff to:

> Never crawl, kneel, or climb ladders, ropes or scaffolds; occasionally crouch, stoop, balance, and climb ramps and stairs; avoid exposure to direct sunlight; simple, routine instructions and tasks; low stress work environment where changes are infrequent and gradually introduced; and frequent judgment is required on the job. (R. at 21–22).

The ALJ determined at step four that Plaintiff was unable to perform her past work. (*Id.* at 25). At step five, based on Plaintiff's RFC, age, education, and work experience, the ALJ found that there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform, including mail clerk, cashier II, and cleaner housekeeper. (*Id*. at 26). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date through the date of the ALJ's decision. (*Id*. at 27).

The Appeals Council denied Plaintiff's request for review on December 22, 2016. (*Id*. at 1). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561-72 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the Plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. (citing § 405(g)). Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion. *Idoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014). Substantial evidence is more than a scintilla but may be less than a preponderance. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). In addition, the ALJ must explain his analysis of the evidence with

3

enough detail and clarity to permit meaningful appellate review. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although great deference is given to the ALJ's determination, the Court must do more than "rubber stamp" the ALJ's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). This deferential standard also does not mean that the Court scours the record for supportive evidence or "rack[s] [its] brains" for reasons to uphold the ALJ's decision. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Id.* Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff raises a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, this Court is persuaded by two arguments in particular. The Court concludes that remand is warranted because the ALJ 1) did not properly weigh the medical opinion evidence and 2) failed to appropriately analyze Plaintiff's subjective symptoms.[1]

### I. **The ALJ did not properly weigh the medical opinion evidence**

Plaintiff argues that the ALJ's analysis of Plaintiff's medical opinion evidence evades meaningful review by this Court. (Dkt. 18 at 12–15). The Court agrees. The

---

[1] Because the Court remands on these grounds, it need not address Plaintiff's other arguments at this time.

4

ALJ gave "little weight" to statements of a "treating and examining medical source"[2] and "great weight" to two non-examining agency consultants, without a sound explanation for these determinations. (R. at 23–24). The ALJ did not "engage[] in the careful analysis required by the regulations and case law" for weighing medical opinion evidence. *See Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Thus remand is warranted.

The opinion of a claimant's treating physician is entitled to controlling weight if it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). The treating physician is familiar with the claimant's condition and progression of his impairments and may bring a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* If a treating physician opinion is not afforded controlling weight, the ALJ must determine what weight to give it in accordance with several factors and must provide "sound explanation" of this determination. 20 C.F.R. § 404.1527(c)(2); *Jelinek*, 662 F.3d at 811. The factors include the length, nature, and extent of any treatment relationship, the frequency of examination, the physician's specialty, explanations of the opinions, the types of tests performed, and the consistency of physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c)(2); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

---

[2] The ALJ did not specifically name the "treating and examining medical source" although the reference is clearly to Necholas Ghannam, M.D. The Court notes that the record shows that Plaintiff visited, Necholas Ghannam, M.D., at Advocate Medical Group-Beverly, and there are also several references to Necholas Aboughannam, M.D., also at Advocate Medical Group-Beverly. These appear to be the same person. Neither the ALJ nor Plaintiff clarified this issue. This issue should be clarified on remand.

5

Here, the ALJ discounted Necholas Ghannam, M.D.'s opinion that Plaintiff's conditions were "disabling" and his conclusion that "she cannot work." (R. at 23). The ALJ may have been be right to discredit this opinion, but the Court cannot reach that conclusion because the ALJ failed to discuss *any of* the factors listed in 20 C.F.R. § 404.1527(c) and instead relied on legally flawed or insufficient reasons to disregard Dr. Ghannam's opinion. For example, the record shows a relatively lengthy and involved treatment relationship between Plaintiff and Dr. Ghannam. (*see* R. at 347–444; 745–49).

The ALJ gave "little weight" to Dr. Ghannam's opinion because it was "assessed in the absence of appropriate treatment." (R. at 23). But the ALJ did not explain what she meant by an "absence of appropriate treatment," including whether she was referring to medication, doctor's visits, or both. And it is well-settled that an ALJ must not substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Without any further explanation or pointing to supporting record evidence, the ALJ improperly "played doctor" to discredit a treating physician opinion.

Next, the ALJ discounted Dr. Ghannam's opinion because it did not provide a function-by-function analysis of Plaintiff's limitations. However, the governing regulations do not require a treating physician to submit a function-by-function assessment of a patient as part of his opinion, and dismissing a treating physician's opinion for that reason is inappropriate. *See Nash v. Colvin*, No. 12 C 6225, 2013

6

WL 5753796, at *12 (N.D.Ill. Oct. 23, 2013) (citing *Knox v. Astrue,* 327 Fed. Appx. 652, 657 (7th Cir. 2009)).

The ALJ further found that Dr. Ghannam opined on an issue reserved for the Commissioner. The ALJ is correct that opinions about Plaintiff's ability to work are reserved for the Commissioner. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). However, this is not an appropriate reason for the ALJ to refuse to consider medical assessments about the nature and severity of Plaintiff's impairments. *See id.* (the ALJ must weigh the doctor's assessments about the nature and severity of claimant's impairments).

In addition, the ALJ broadly stated that the opinion is "inconsistent with the corresponding treatment records, showing limited objective findings." (R. at 23). This statement disregards the nature of fibromyalgia[3] which "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence…" *See Lanzi-Boland v. Berryhill,* No. 16 C 8856, 2017 U.S. Dist. LEXIS 176140, at *18–19 (N.D. Ill. Oct. 24, 2017) (*citing Sarchet v. Charter*, 78 F.3d 305 (7th Cir. 1996)). Other evidence contradicts the ALJ's conclusion of "limited objective findings," such as the conclusions and notes of John P. Case, M.D. regarding Plaintiff's fibromyalgia and muscle pains and easy fatigability. (R. at 590–637, 641–42). In addition to the fibromyalgia, Plaintiff was diagnosed with lupus based on 2012 blood tests performed by Shri Agrawal, M.D. which show that Plaintiff tested

---

[3] Fibromyalgia is "a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." Mayo Clinic, FIBROMYALGIA, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last accessed December 15, 2017).

7

positive for antinuclear antibodies (ANAs), a marker for possible autoimmune disorders, such as lupus, a condition that can also cause pain and swelling.[4] (*Id.* at 404, 442, 420).

Finally, in contrast to the "little weight" given to treating physician Dr. Ghannam, the ALJ granted "great weight" to two *non-examining* agency consultants, Lionel Hudspeth, Psy.D. and Tyrone Hollerauer, Psy.D. (R. at 24, 109, 146). Because the ALJ did not give the treating physician opinion controlling weight, the ALJ was required to explain the weight given to the consulting physician opinions in accordance with the relevant factors in 20 C.F.R. § 404.1513(a). 20 C.F.R. § 404.1527(e)(2). In addition, "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [given] their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The ALJ did not discuss any of relevant factors related to Drs. Hudspeth and Hollerauer or the explanations they provided in support of their determinations. Instead, the ALJ's explanation was limited to finding that their opinions were consistent with "limited and conservative treatment" and broad statement about the "medical evidence." (R. at 24).

---

[4] ANAs are unusual antibodies, detectable in the blood, that have the capability of binding to certain structures within the nucleus of the cells. Frequently, ANAs are found in patients with a number of different autoimmune diseases, such as systemic lupus erythematosus, Sjogren's syndrome, rheumatoid arthritis, polymyositis, scleroderma, Hasimoto's thyroiditis, juvenile diabetes mellitus, Addison disease, vitiligo, pernicious anemia, glomerulonephritis, and pulmonary fibrosis. William C. Shiel, Jr., MD, *Aninuclear Antibody Test (ANA)*, MEDICINENET.COM, https://www.medicinenet.com/antinuclear_antibody/article.htm (last accessed December 4, 2017).

In sum, the ALJ failed to give a sufficient explanation of her determination that Plaintiff's treating physician should be given only "little weight" and the non-examining agency consultants "great weight", leaving the Court without a way to meaningfully review the ALJ's conclusions regarding the medical opinion evidence.

## II. The ALJ's evaluation of Plaintiff's symptoms is not based on substantial evidence

Under the Social Security Regulations, symptoms, including pain, are evaluated using a two-step process. The ALJ first considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce the symptoms Claimant is alleging and then makes a finding on the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p, 2016 WL 1119029, at *2.[5] After analyzing a Plaintiff's symptoms, the ALJ makes her RFC determination. 20 C.F.R. 404.1520(e) and 416.920(e)).

The ALJ's dismissal of Plaintiff's subjective testimony was premised on several impermissible grounds. The ALJ discredited Plaintiff's testimony because there was

---

[5] Since the ALJ issued her decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." See SSR 16-3p, 2016 WL 1119029, at *1 (effective March 16, 2016). As SSR 16-3p is simply a clarification of the Administration's interpretation of the existing law, rather than a change to it, it can be applied to Claimant's case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016). The Court acknowledges the Administration's recent clarification regarding SSR 16-3p, instructing adjudicators only to apply this ruling when making "determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Nevertheless, the Court continues to follow *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) indicating SSR 16-3p and SSR 96-7p are not substantively different.

little objective evidence to support it. But the "absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016); *see also Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015) (complaints of pain need not be confirmed by diagnostic tests to be credible). Testimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence. *See Hall,* 778 F.3d at 691; *Stark v. Colvin,* 813 F.3d 684, 688 (7th Cir. 2016); *Pierce v. Colvin,* 739 F.3d 1046, 1049–50 (7th Cir.2014) ("Pain can be severe to the point of being disabling even though no physical cause can be identified ..."). The treatment records noted numerous accounts of Plaintiff's contemporaneous reports of chronic pain. (*See* R. at 358, 401, 479, 534, 743).

As discussed, because fibromyalgia often produces pain and other symptoms out of proportion to the 'objective' medical evidence, the ALJ must carefully evaluate credibility in this regard since fibromyalgia pain may fluctuate in intensity and may not always be present. *See* SSR 12-2p, 2012 WL 3104869 at *5 (July 25, 2012) and *Lanzi-Boland*, 2017 U.S. Dist. LEXIS 176140, at *19 ("…the ALJ herself accepted Claimant's diagnosis of fibromyalgia and found that it qualified as a severe impairment, so it is puzzling how the ALJ could consider [Claimant's] subjective complaints associated with that condition to be a basis for challenging her credibility.") (internal citations and quotations omitted). Here, the ALJ did not evaluate Plaintiff's claims with sufficient care and understanding of fibromyalgia and in light of the record as a whole.

The ALJ also referred multiple times to Plaintiff's "conservative" level of treatment. (R. at 25). Both SSR 16-3p and the Administration's prior policies note that the failure to pursue treatment for a condition can suggest that symptoms may not be severe. However, those rulings also direct the ALJ not to draw such a conclusion without first considering any alternate explanations. The ALJ must not make inferences about a Plaintiff's condition from the level of treatment pursued or received unless the ALJ has explored the Plaintiff's explanations about the lack of medical care. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). "An ALJ is not allowed to infer from an applicant's failure to have sought medical care that he's a malingerer without asking him *why* he didn't seek care—and specifically whether he had health insurance." *Garcia v. Colvin*, 741 F.3d 758, 761–62 (7th Cir. 2013) (emphasis in original). The record here reflects Plaintiff's loss of health insurance: Plaintiff testified that she had "lost [her] insurance" and at one point had not "seen a doctor in maybe a year and a half because [she] didn't have any insurance." (R. at 48). Thus on remand, the ALJ should "consider and address reasons for not pursuing treatment that are pertinent to [Plaintiff's] case." SSR 16-3p.

Further, there can be a "great distance" between an individual who responds to treatment and medication and one who is able to enter the workforce. *See Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011). Invoking Plaintiff's activities of daily living to discount her testimony regarding her limitations is problematic because her ability to do limited chores, cooking, and self-care says little about her ability to perform the tasks of a full time job. *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir.

11

2016). The ALJ relied on Plaintiff's activities of daily living to discount the testimony that she lays in bed all day. (R. at 25). The ALJ also relied on a statement in one January 2015 rheumatology report where Plaintiff reported "mild limitation" in ADLs and "moderate limitation" in work, as well as Plaintiff's ability to answer questions appropriately during her hearing as proof that she does not suffer from the difficulties with concentration and memory. (*Id.*). This analysis shows that the ALJ failed to acknowledge that Plaintiff's symptoms may fluctuate. Indeed, the ALJ found Plaintiff had severe impairments of depression, anxiety, and PTSD. But the ALJ's opinion does not reflect an understanding that a person under treatment for a chronic disease, whether physical or psychiatric, is likely to have "better days and worse days" and symptoms that "wax and wane." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (internal citations omitted).

Because the ALJ's credibility determination was based on factors that were not properly analyzed and/or not supported by substantial evidence, remand is warranted. *See Ghiselli*, 837 F.3d at 778–79.

### III. Summary

The ALJ failed to provide sufficient explanation for her findings related to the medical opinion evidence and Plaintiff's subjective symptoms and relied at least in part on misapplications of the law. The errors were not harmless because they informed several aspects of the ALJ's decision with respect to Plaintiff's RFC and ability to perform certain jobs in the national economy. Because the Court cannot conclude that the ALJ's conclusions would be the same if she had correctly applied

the law to the facts, the case should be remanded so the ALJ can reweigh the opinion evidence and reevaluate her credibility. On remand, the ALJ shall consider all of the evidence of record and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [17] is GRANTED and Defendant's motion for summary judgment [19] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: December 15, 2017  E N T E R:

MARY M. ROWLAND
United States Magistrate Judge